**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERTO MIRANDA ZAMARRON, | ) |
| Petitioner, | ) Case No.3:10-CV-00094-ECR-VPC |
| vs. | ) |
| | ) ORDER |
| STATE OF NEVADA, *et al.,* | ) |
| Respondents. | ) |

This is an action on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, brought by petitioner Roberto Miranda Zamarron, proceeding without counsel. Following abandonment of unexhausted claims, the Court is presented with respondents' Answer (ECF No. 35). Petitioner did not file a reply.

## I.   Procedural Background

Petitioner was found guilty in 2005, following a jury trial, on four counts of trafficking in a controlled substance in violation of Nevada law. Exhibit 25.[1] He was sentenced to two consecutive and two concurrent terms of ten to 25 years in prison. *Id.* Petitioner completed his state appellate and post-conviction reviews without obtaining relief. He filed his federal petition for writ of habeas corpus with this Court on March 11, 2010, raising three grounds for relief (ECF No. 7).

Respondents filed a motion to dismiss the petition claiming petitioner had failed to exhaust ground two and parts of ground three of the petition (ECF No. 9). Petitioner agreed to abandon

---

[1] The exhibits referenced in this Order were submitted by respondents in support of the motion to dismiss (ECF No. 9) and are found in the Court's record at docket entries 10, 11, 12, 13, 14 and 15.

those grounds for relief (ECF No. 32) and respondents filed their answer to the remaining claims (ECF No. 35).

## II. Legal Standard

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the standards of review that this Court applies to the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1173 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 149 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. 1173 (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495). The "unreasonable application" clause requires the state court decision to be

more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409, 120 S.Ct. 1495). In determining whether a state court decision is contrary to federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir.2002). With respect to pure questions of fact, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

If there is no reasoned decision upon which the Court can rely, then it must make an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law. *See Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

**III.    Discussion**

    Ground One

Petitioner first claims that there was insufficient evidence presented at trial to establish the elements of Trafficking in a Controlled Substance as to each of the four counts. As to count one, petitioner argues the police did not know and could not prove who put the heroin inside the backpack found in the laundry basket. As to count two, petitioner argues that the weight used to charge and convict him of a level three trafficking charge was inaccurate because the full mixture was weighed - and the full mixture "is never solely heroin." Petitioner also argues that it was never proved that the drugs associated with counts three (heroin) and four (cocaine) found in the silver Lincoln were never shown to be in petitioner's possession or custody, because at the time of his arrest he was driving a gold Nissan.

In determining a claim of insufficient evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 C.St 2781, 2789 (1979).

1    The statute under which petitioner was charged and convicted, NRS 453.3385(3), requires
2 proof that the defendant knowingly and intentionally sold, manufactured, delivered, or brought into this
3 state or was in actual or constructive possession of 28 grams or more of a Schedule I controlled
4 substance. Nevada law identified both heroin and cocaine as Schedule I controlled substances. *See*
5 Nevada Administrative Code (NAC) 453.510(3) and (8).

6    The Nevada Supreme Court denied this claim while applying the proper legal standard
7 as established by the United States Supreme Court in *Jackson v. Virginia. supra. See Lisle v. State,* 113
8 Nev. 679, 691-92, 941 P.2d 459, 467 (1997). In reviewing the evidence presented, the court noted that

> [T]he State presented evidence that Miranda-Zamarron had 48.11 grams of heroin on his person at the time of his arrest. When DEA Task Force officers searched the apartment Miranda-Zamorran shared with his wife and two small children, they found 154.22 grams of heroin; the keys to the silver Lincoln; and Miranda-Zamarron's Social Security card, resident alien card, and receipt for the apartment rent. The officers found no indication that anyone else lived in the apartment. While Miranda-Zamarron was under surveillance, he was the only person observed driving the silver Lincoln. When the Lincoln was searched, Task Force officers discovered 121.87 grams of heroin and 139.47 grams of cocaine.
>
> We conclude that the jury could reasonably infer from the evidence presented that Miranda-Zamarron was in possession of heroin and cocaine seized during his arrest, the search of his apartment, and the search of the Lincoln and that the amount of heroin he had on his person at the time of his arrest exceeded 28 grams.

18 Exhibit 34, pp. 3-4.

19    Petitioner has not demonstrated and this Court does not find that the state court's analysis
20 was unreasonable in either its application of clearly established federal law or in its factual
21 determinations. Testimony at trial was abundant that petitioner was the only adult male seen entering
22 the apartment or either vehicle. The drugs were all found in areas where petitioner had actual and
23 consistent access and the amount of the drugs by weight was more than adequate to meet the minimum
24 28 grams statutory requirement.

25    Petitioner is not entitled to relief on ground one of the amended petition.

26

Ground Three[2]

In this ground, petitioner raised various claims of ineffective assistance of counsel in violation of his rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." *Premo v. Moore* 131 S.Ct. 733, 739 (U.S., 2011) quoting *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1419 (2009). "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S.668, 688, 104 S.Ct. 2052 (1984). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.*, at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.  "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.* The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Id*. at 690.

     A.    Counsel was ineffective at trial based upon the cumulative effect of errors and deficiencies in his performance.

Petitioner alleges that his counsel, a court appointed conflict counsel who was paid a total of $500 to represent him in this case through trial and including preparation of the appeal fast track statement, failed to provide effective representation due to the cumulative effect of the following errors and omissions: counsel did not meet with petitioner except at the courthouse; failed to develop any relationship with petitioner; failed to hire an investigator; considered everything petitioner said to be a

---

[2] Ground two was abandoned by petitioner and will not be discussed here.

lie but believed police; failed to investigate the confidential informant; failed to adequately test the prosecution's witnesses through cross-examination; did not object to the admission of a single piece of evidence; failed to seek a negotiated resolution; failed to mitigate sentence; and failed to write an adequate fast track statement for appeal.

While acknowledging the holding of *Parle v. Runnels,* 505 F.3d 922 (9th Cir. 2007), respondents argue that the United States Supreme Court has "never clearly established that distinct constitutional claims can be cumulated to grant habeas relief," thereby precluding section 2254 habeas relief on such a claim. Answer (ECF No. 35), p. 11.

In *Parle,* the Ninth Circuit said,

> The Supreme Court *has* clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. *Chambers [v. Mississippi],* 410 U.S. 284, 298, 302-03, 93 S.Ct. 1038 (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"). [fn 5]  The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal. *Chambers,* 410 U.S. at 290, n. 3, 93 S.Ct. 1038. [fn 6: omitted.]
>
> [fn 5: *See also Montana v. Egelhoff,* 518 U.S. 37, 53, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (stating that *Chambers* held that "erroneous evidentiary rulings can, in combination, rise to the level of a due process violation"); *Taylor v. Kentucky,* 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) ([T]he cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness....").
>
> Although we have never expressly stated that *Chambers* clearly establishes the cumulative error doctrine, we have long recognized the due process principles underling *Chambers. See, e.g., Thomas v. Hubbard*, 273 F.3d 1164, 1179-80 (9th Cir.2002) (analyzing cumulative error in AEDPA habeas petition); *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir.2000) (noting that cumulative error doctrine applies on pre-AEDPA habeas review); *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996) (recognizing the importance of considering "the cumulative effect of multiple errors").

6

> Under traditional due process principles, cumulative error warrants habeas relief only where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710 (internal quotations omitted); *see also Thomas,* 273 F.3d at 1179-81 (noting similarity between *Donnelly* and *Brecht* standards and concluding that "a *Donnelly* violation necessarily meets the requirements of *Brecht* "). In simpler terms, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. *See Chambers*, 410 U.S. at 294, 302-03, 93 S.Ct. 1038.

*Parle v. Runnels,* 505 F.3d at 927 (emphasis added).

Respondents' contention that there is no United States Supreme Court precedent clearly establishing cumulative error because of the Court's reference to the specific facts of each case where the error has been found, is misplaced. By its very nature, a cumulative error claim requires a careful review of the specific facts of the case to consider how the effect of the errors accumulated to the prejudice of the petitioner. There can be no generalization of the elements required to find cumulative error  - each case is unique in itself.  But, where the errors rendered the criminal defense 'far less persuasive,' ... and thereby have a 'substantial and injurious effect or influence' on the jury's verdict" a due process violation has occurred.  Thus, even though the Court in *Chambers, Egelhoff, and Taylor, supra.,* note that the specific facts of the particular case warrant the finding of cumulative error, such recognition does not undermine the existence of a due process violation claim based on cumulative error. Such a claim has been clearly established by the United States Supreme Court. *See, id.*

In determining whether the cumulative effect of counsel's errors created a due process violation, the Court must determine "whether the errors rendered the criminal defense 'far less persuasive,'" such that there was a 'substantial and injurious effect or influence' on the jury's verdict." *Parle*, 505 F.3d at 928 (citations omitted).  The analysis must consider the combined effect on the outcome, not the impact of each purported error taken alone. *Chambers,* 410 U.S. at 290, n.3, 93 S.Ct.

1038. However, only if this Court finds that the state court's determination of the claim was objectively unreasonable may the evaluation of the errors' impact on the jury verdict follow. *Parle,* 505 F.3d at 927. At that point, a harmless error analysis must be used to see if there was a "substantial or injurious effect" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710 (1993).

In evaluating this claim on appeal from post-conviction review, the Nevada Supreme Court determined there was overwhelming evidence of guilt which precluded any showing that petitioner had been prejudiced by counsel's failures. Exhibit 76, p. 3. Furthermore, the court noted that petitioner had failed to demonstrate "how the proceedings would have been different" if counsel had met with him, not believed the police or slowed down the proceedings at trial. *Id.* In its examination of the ineffective assistance of counsel claims, the court discussed the large quantities of drugs found to be in his possession or under his control, noted the police surveillance that tied him to at least two previous drug transactions with a confidential police informant, and determined that petitioner's assertions as to the unreliability of the confidential informant were naked allegations with no factual support. *Id.*

Petitioner has not demonstrated that the state court's determination of this claim was objectively unreasonable, either in application of clearly established federal law or in the factual determinations associated with the analysis of the claim. Petitioner is not entitled to relief on this claim of ineffective assistance of counsel.

    C. Counsel was ineffective when he failed to argue that the four separate convictions violated the prohibition against double jeopardy and should be merged into a single charge.

Petitioner claims counsel should have argued that the four separate trafficking charges were actually part of the same act of possession, violating double jeopardy. This claim lacks merit where the facts and the law support the Nevada Supreme Court's determination.

The Double Jeopardy Clause affords a defendant three basic protections:" '[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'

" *Ohio v. Johnson,* 467 U.S. 493, 498-499, 104 S.Ct. 2536, 2540 (U.S.1984) quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225 (1977), and *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076 (1969). In *U.S. v. Blakeney,* 752 F.2d 152 (D.C. Cir. 1985), the circuit court concluded that possession of quantities of marijuana by the same person but held in separate locations warranted separate charges. *Id.* at 155.

In this instance, the state court properly concluded that the diverse locations of the drugs and the fact that there were different kinds of drugs found in separate locations supported the separate charges. *See,* Exhibit 34 (addressing sufficiency of evidence for four counts) and Exhibit 76, p. 2 (discussing appropriateness of separate charges and rational therefor). According to the proceedings at trial, count one applied to the heroin found inside the apartment located at 4175 Neil Road in a backpack. Exhibit 18, pp. 47-48. Count two arose from his possession of the heroin found in his waistband at the time of his arrest at Coliseum and Peckham in Reno. *Id.* at 32-33. Count three addresses the heroin found in the silver Lincoln automobile parked at the apartment. *Id.* at 124. Count four charged petitioner with possession of cocaine found in the Lincoln parked at the apartment. Petitioner possessed two different kinds of Schedule I controlled substances found in four separate locations in his possession or under his control, justifying the separate charges imposed here. As a result, petitioner cannot show that he was prejudiced by counsel's failure to argue the multiple charges violated double jeopardy. This claim for relief was properly decided by the Nevada Supreme Court and no relief is warranted under 28 U.S.C. § 2254(d).

D.   Counsel was ineffective for failing to argue the traffic stop was illegal and for failing to move to suppress the heroin found in his waistband when they stopped his vehicle.

Petitioner contends that the traffic stop resulting in his arrest was illegal and that counsel should have moved to suppress the evidence of the heroin found in his waistband.

The Fourth Amendment prohibits unreasonable searches and seizures and the temporary detention of an individual during the stop of an automobile by the police constitutes a seizure subject

to the Fourth Amendment's limitations and protections. *Whren v. U.S.,* 517 U.S. 806, 809-10, 116 S.Ct. 1769 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probably cause to believe that a [crime] has occurred. *Id. See also, Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968).

In petitioner's case, the DEA agents who stopped and arrested him had been surveilling petitioner for a matter of weeks and had previously arranged for at least two drug purchases from petitioner using a confidential informant. *See* Exhibit 76, p. 2. These facts, together with the arranged drug sale to which petitioner was traveling, gave the officers the necessary probable cause to stop his vehicle and arrest him. The search of his person was a reasonable custodial search of an arrestee. *Chimel v. California,* 395 U.S. 752, 762-3 (1969); *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341 (1914).

Applying *Chimel* reasonably, the Nevada Supreme Court properly denied petitioner's claims that the traffic stop was improper to effect his arrest and the accompanying search of his body which resulted in the discovery of the heroin in his waistband. This claim lacks merit and no relief is warranted where petitioner cannot show that counsel was ineffective or that he was prejudiced under these circumstances.

E.  Counsel was ineffective at sentencing for failing to argue that charges should be merged and for failing to present mitigation evidence in an effort to obtain a lesser sentence.

Petitioner argues that counsel failed to properly argue at sentencing that the four charges should merge and that counsel failed to offer mitigating evidence at sentencing to reduce the sentences imposed.

As discussed above, the merger argument would have been futile, as the four separate charges were justified under the law and circumstances and the jury convicted on all four counts. In relation to the failure to present mitigating evidence, the Nevada Supreme Court noted that petitioner

had failed to identify any such evidence that would have been available or that such evidence would have been effective given the large quantities of drugs in petitioner's possession. Exhibit 76, p. 4.

Petitioner has not demonstrated that his counsel was ineffective or that he was prejudiced as a result. Thus, the Nevada Supreme Court's determination that the claim lacked merit is not contrary to or an objectively unreasonable application of the federal law set out in *Strickland*. This claim will be denied.

**IV.    Conclusion**

The claims of the petition lack merit and this Court cannot grant relief within the constraints of 28 U.S.C. § 2254(d). The Amended Petition shall be denied.

In order to proceed with an appeal from this court, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.* The Supreme Court has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the Court determines that none meet that standard. Accordingly, the Court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Amended Petition is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY**. The Clerk shall enter judgment accordingly.

Dated this 30th day of September 2011.

_____
UNITED STATES DISTRICT JUDGE